94 N.J. Super. 576 (1967)
229 A.2d 659
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MEDARDO SEJUELAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 3, 1967.
Decided April 21, 1967.
*578 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Aaron Z. Schomer argued the cause for appellant.
Mr. Archibald Kreiger, Assistant County Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by SULLIVAN, S.J.A.D.
This is an appeal from a conviction of unlawful possession of a narcotic drug. Defendant was sentenced to New Jersey State Prison.
Defendant denied the charge of possession and, at trial, his counsel, in opening to the jury, stated that he intended to prove that defendant "was an innocent victim of the planning of someone else who for reasons of his own found it useful to put Mr. Sejuelas in a compromising position." Certain evidence which defendant offered in support of this defense was rejected by the trial court and forms the basis of this appeal.
The police officers who arrested defendant testified that they were patroling in a police car and observed a parked car with the right rear door open. There were two men at the car door, one of whom was leaning into the car. Thinking that they might be of some assistance, the officers stopped their vehicle and approached the car, whereupon defendant, who was the man leaning in the car, "scurried" through the car and got out through the other rear door. One of the officers who went around the car to intercept defendant testified that he saw defendant reach into his pocket, withdraw some packets of glassine envelopes, and throw them on *579 the ground. The packets were picked up by the officer, later tested, and found to contain heroin. It is this evidence which formed the basis of the possession charge against defendant. Defendant and his companion, who was named Camacho, were taken to police headquarters where defendant was booked on the charge of possession. No charges were preferred against Camacho, who was known to one of the police officers, and he was released.
Defendant categorically denied that he had dropped the glassine packets on the ground. He testified that he had been acquainted with Camacho for a period of about three months. On the day he was arrested he happened to meet Camacho in a restaurant with two other men whose identity was unknown to defendant. Camacho told defendant that he had something to tell him, so defendant got in Camacho's car with the two men. The car was driven by Camacho to the place in question, where it was parked and the two other men left. Immediately thereafter the police arrived while defendant was sitting in the rear seat. As defendant got out of the car a police officer grabbed him and searched him and "then bent down and he say `we got you pretty good now.'"
Defendant next called as a witness a Mrs. Maldonado, who testified that she was visiting a friend in the vicinity and witnessed the incident which resulted in defendant's arrest. She knew defendant and Camacho by name but was not a friend of either of them. She testified that when the police car arrived she saw Camacho get out of the car first. Defendant then followed. While the two men were standing there she saw Camacho drop a bag to the sidewalk from his hand. This was the package which the police officer picked up.
Mrs. Maldonado also testified that prior to the day in question she had seen Camacho with his wife and two men on the street and heard them speaking about defendant. She was then asked to relate the conversation which she overheard. On objection by the prosecution the trial judge refused to allow her to testify to what she had heard on the ground that it was hearsay. When counsel for defendant *580 said that he would like to make an offer of proof, the judge stated that he did not want counsel to tell what he intended to prove, but had no objection to counsel's relating the basis on which he thought his proof was admissible. Counsel then stated that the substance of the conversation had a factual relationship to the events that occurred several days later and would explain or serve to corroborate defendant's factual contentions. However, the trial judge ruled that the testimony was hearsay and that the best evidence of the conversation would be Camacho or his wife or the two other men. Counsel urged that his pretrial investigation had convinced him that Camacho would be a hostile witness and he could not afford to be bound by any testimony Camacho might give. Nevertheless, the court adhered to its ruling.
In his brief on appeal defendant represents that the substance of the conversation which Mrs. Maldonado overheard was that Camacho said he was going to "frame" defendant on a narcotics charge.
Defendant argues that the reasonable inference to be drawn from the evidence in the case is that Camacho was an informer or a stool pigeon. For this reason it is urged that defendant should not have been restricted to putting Camacho on the witness stand to testify about the alleged conversation.
The proffered testimony was manifestly hearsay in nature and was excluded by the trial court on that ground. However, not all hearsay evidence is incompetent. If an adequate basis of trustworthiness can be established, hearsay evidence may be admitted under recognized exceptions to the hearsay rule.
We conclude that under the particular facts and circumstances of this case, the proffered testimony was admissible as an exception to the hearsay rule either as a declaration against penal interest, or as a declaration of present intention to engage in a future course of conduct or act.
A declaration against interest is admissible as an exception to the hearsay rule when the declarant is unavailable *581 to testify. 5 Wigmore on Evidence (3d ed. 1940) § 1456; Appelget v. Van Hise, 44 N.J. Super. 507, 518 (Ch. 1957). Also the general rule in this country seems to be that a declaration against interest encompasses only a pecuniary or proprietary interest and not a penal interest. The narrowness of this general rule has been criticized by leading authorities in this field. Professor Wigmore refers to it as a "barbarous doctrine which would refuse to let an innocent accused vindicate himself." Wigmore, op. cit., § 1477; McCormick on Evidence, 549-553. The modern trend is towards a recognition that a declaration against penal interest contains sufficient elements of trustworthiness to make it admissible in evidence. Also the declarant does not have to be dead or otherwise unavailable. People v. Spriggs, 60 Cal.2d 868, 36 Cal. Rptr. 841, 389 P.2d 377 (Sup. Ct. 1964); see, Report of the New Jersey Supreme Court Committee on Evidence on Proposed Rules of Evidence (March 1963), Rule 63(10) and comments thereunder. In New Jersey, in a civil action, it has been held that a declaration against penal interest is admissible as an exception to the hearsay rule where the declarant was considered to be "an unavailable witness." Bands Refuse Removal, Inc. v. Borough of Fair Lawn, 62 N.J. Super. 522, 557-561 (App. Div. 1960), certification denied 33 N.J. 387 (1960).
Even where the general rule is followed, numerous exceptions to it have been fashioned. One such exception is that the statement against penal interest is admissible where there is direct evidence tending to substantiate it. State v. Larsen, 415 P.2d 685 (Idaho Sup. Ct. 1966); see Annotation "Admissibility in favor of accused in criminal cases of extrajudicial confessions by stranger" 48 A.L.R. 348 (1927).
Here the evidence not only placed Camacho at the scene when the narcotics was picked up from the ground by the police officer, but defendant's alleged eyewitness testified that it was Camacho who dropped the packet in question on the ground. If we believe defendant, it was Camacho who *582 lured him to this place just prior to the arrival of the police. The totality of this evidence, if believed, directly substantiates the conversation which Mrs. Maldonado allegedly overheard.
To restrict defendant to calling Camacho as his witness to testify to the alleged conversation was improper. It would have been highly unlikely that he would have admitted anything. Indeed, counsel for defendant represented to the trial court at the time that his investigation had indicated that Camacho would be a hostile witness and that defendant could not afford to be bound by any testimony Camacho might give. Therefore, for all practical purposes, Camacho was unavailable as a witness to defendant. Bands Refuse Removal, supra.
We need not determine whether every declaration against penal interest is admissible under any and all circumstances. We are satisfied that under the particular facts and circumstances of this case essential justice and common fairness require admission of the proffered testimony as a declaration against penal interest. Defendant should have the benefit of a fact which, if proven, would have a direct bearing on the issue of his guilt. See Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (Holmes, J., dissents).
The proffered evidence was also admissible as a declaration of present intention to engage in a future course of conduct or act. This is a well-recognized exception in both the criminal as well as the civil law. 6 Wigmore, Evidence (3d ed. 1940), § 1725; 1 Ibid., § 102. Cases in New Jersey applying this rule in criminal cases include State v. Thornton, 38 N.J. 380, 389-394 (1962); Hunter v. State, 40 N.J.L. 495 (E. & A. 1878); State v. Lang, 108 N.J.L. 98 (E. & A. 1931); State v. Kane, 77 N.J.L. 244 (Sup. Ct. 1909). See also State v. Baldwin, 47 N.J. 379, 394 (1966). As noted in Wigmore, the precedents mostly involve the conduct of a victim of the crime. Where the declarant is now dead admissibility is particularly compelling. Thornton, *583 supra. However, the rule is not limited to this type of situation. State v. Baldwin, and State v. Kane, supra.
In United States v. Annunziato, 293 F.2d 373 (2 Cir. 1961), the court held that on a trial of a union business agent for receiving money in violation of the Labor Management Relations Act of 1947, testimony that at a luncheon which took place prior to the alleged pay-off the corporate president (now dead) told his son, who was the corporate secretary and treasurer, that he had agreed to send some money to the union business agent who had requested it, was admissible as a declaration of intention.
In the instant case Camacho was allegedly overheard to say that he was going to frame defendant on a narcotics charge. Defendant produced evidence at trial which tended to show that Camacho had in fact framed him. Under these circumstances we conclude that the proffered evidence, although hearsay, possessed sufficient indicia of trustworthiness as to make it admissible as a declaration of present intention to engage in a future course of conduct or act.
The prejudice to defendant is apparent. The case was a close one and the jury had difficulty in reaching a verdict as shown by the record. This additional evidence possessed the clear capacity to have altered the outcome of the case.
Reversed and remanded for a new trial.
KOLOVSKY, J.A.D. (concurring).
I agree that the proffered testimony of Mrs. Maldonado should have been admitted, but would base such determination solely on the ground that the testimony was admissible as a statement of a present existing state of mind evidencing a design or plan to do a specific act.